|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **DISTRICT OF NEVADA** | |

| | | |
|---|---|---|
| 3 | DAVID PUTZER, | ) |
| | | ) 3:07-cv-0620-LRH-VPC |
| 4 | Plaintiff, | ) |
| | | ) |
| 5 | vs. | ) **REPORT AND RECOMMENDATION** |
| | | ) **OF U.S. MAGISTRATE JUDGE** |
| 6 | | ) |
| | JAMES DONNELLY, *et al.*, | ) |
| 7 | | ) August 17, 2009 |
| | Defendants. | ) |
| 8 | | ) |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's emergency motion for preliminary injunction (#65). Defendants opposed (#68) and plaintiff replied (#81). The court has thoroughly reviewed the record and the motions and recommends that plaintiff's motion for preliminary injunction (#65) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff David Putzer ("plaintiff"), acting *in pro se*, is currently a prisoner at Lovelock Correctional Center ("LCC") in the custody of the Nevada Department of Corrections ("NDOC") (#99). Plaintiff brings his first amended complaint pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 2000cc, the Religious Land Use and Institutionalized persons Act ("RLUIPA"), alleging that prison officials violated his First and Fourteenth Amendment rights to free exercise of religion, due process, and equal protection, and retaliated against him after he exercised his First Amendment rights while incarcerated at LCC. *Id*. Plaintiff names as defendants James Donnelly, correctional officer at LCC; Richard Garcia, Chaplain at LCC; Ronald Halstead, Associate Warden of Operations at LCC; Robert LeGrand, Associate Warden of Programs at LCC; Valaree Olivas, correctional officer at LCC; Jack Palmer, LCC Warden; Howard Skolnik, NDOC Director; and Teena Schore, correctional officer at LCC. *Id*.

Plaintiff asserts two counts of alleged constitutional violations. Plaintiff alleges that defendants prevent him from attending a candle-lighting ceremony on Friday evenings just before

sundown, in celebration of the Sabbath. Plaintiff contends that his Jewish faith requires him to be present for this ceremony. By not allowing him to attend, defendants are violating his rights under the First Amendment's Free Exercise clause and placing a substantial burden on his religious practice in violation of RLUIPA. The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Preliminary Injunction Standard

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, --- U.S. ----, ----, 128 S.Ct. 2207, 2219, 171 L.Ed.2d 1 (2008) (citations and quotation omitted). Instead, the instant motion requires the court to "'balance the competing claims of injury and . . . the effect of the granting or withholding of the requested relief.'" *Winter v. Natural Res. Def. Council*, --- U.S. ----, ----, 129 S.Ct. 365, 376 (2008) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)). A plaintiff seeking a preliminary injunction must establish the following: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest. *Id.* at 374 (citations omitted).[1]

---

[1] Before *Winter*, the courts in this circuit occasionally applied an alternative, "sliding-scale" test for issuing a preliminary injunction which allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter*, the Supreme Court did not directly address the viability of the balancing approach. *Winter*, 129 S.Ct. at 392 (Ginsburg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high ... This Court has never rejected that formulation, and I do not believe it does so today."). In any event, the court will consider prospective relief based on all four of the traditional preliminary injunction requirements. Applying the balancing approach here would not lead to a different result, as plaintiff has not made a strong showing on any single factor for injunctive relief. *See infra*.

The Prison Litigation Reform Act (PLRA) imposes certain guidelines on the prospective relief to be granted to an inmate litigant challenging prison conditions:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators – no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

**B.  Analysis**

Plaintiff alleges that the defendants have violated his First and Fourteenth Amendment rights, and his rights under RLUIPA, by not allowing him to attend the Jewish Sabbath candle-lighting ceremony on Friday evenings prior to sundown (#65, p. 5). Plaintiff requests the court enjoin defendants from preventing him from attending these services. *Id*.

**1.  Likelihood of Success on the Merits**

To obtain a preliminary injunction, plaintiff must offer evidence that there is a likelihood he will succeed on the merits of his claim. *Johnson*, 72 F.3d at 1430. "Likelihood of success on the merits" has been described as a "reasonable probability" of success. *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).

**(A)  RLUIPA**

The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §2000cc *et seq*., provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person

> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). "A person may assert a violation of [RLUPIA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).

To establish a RLUIPA violation, the plaintiff bears the initial burden to prove that the defendants' conduct places a "substantial burden" on his "religious exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). Once the plaintiff establishes a substantial burden, defendants must prove that the burden both furthers a compelling governmental interest and is the least restrictive means of achieving that interest. *Id*. at 995. RLUIPA is to be construed broadly in favor of the inmate. *See* 42 U.S.C. § 2000cc-3(g) ("This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution"). The Ninth Circuit has set out four factors for the RLUIPA analysis: (1) what "exercise of religion" is at issue; (2) whether there is a "burden," if any, imposed on that exercise of religion; (3) if there is a burden, whether it is "substantial;" and (4) if there is a "substantial burden," whether it is justified by a compelling governmental interest and is the least restrictive means of furthering that compelling interest. *Navajo Nation v. U.S. Forest Service*, 479 F.3d 1024, 1033 (9th Cir. 2007), *aff'd en banc*, 535 F.3d 1058, 1068 (9th Cir. 2008).

Although RLUIPA does not define "substantial burden," the Ninth Circuit has stated that a substantial burden is one that is "'oppressive' to a 'significantly great' extent. That is, a 'substantial burden, on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier*, 418 F.3d at 995 (*quoting San Jose Christian coll. V. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). The burden need not concern a religious practice that is compelled by, or central to, a system of religious belief, *see* 2000cc-5(7)(A); however, the burden must be more than an inconvenience. *Navajo Nation*, 479 F.3d at 1033 (internal quotations and citations omitted). In fact, RLUIPA "bars inquiry into whether a

particular belief or practice is 'central' to a prisoner's religion." *Cutter v. Wilkenson*, 544 U.S. 706, 725, n. 13 (2005). The burden must prevent the plaintiff "from engaging in [religious] conduct or having a religious experience." *Navajo Nation*, 479 F.3d at 1033 (internal citations omitted).

Courts must also take into account the burdens a requested accommodation may impose on non-beneficiaries. *Cutter*, 544 U.S. at 720. In its analysis of the "compelling governmental interest" standard, the court must exhibit a "particular sensitivity to security concerns" and be "mindful of the urgency of discipline, order, safety, and security in penal institutions." *Id*. at 722-23. To that end, the court should apply RLUIPA's standard with deference to the expertise of prison administrators in establishing regulations that will maintain order consistent with the consideration of costs and limited resources. *Id*. (internal citations omitted). Finally, the Supreme Court has specifically noted that RLUIPA "does not differentiate among bona fide faiths" and has stated that courts must be satisfied that RLUIPA's "prescriptions are and will be administered neutrally among different faiths." *Id*. at 720, 723.

Plaintiff has not demonstrated that defendants have placed a substantial burden on his religious exercise. It is undisputed that plaintiff cannot attend the candle-lighting ceremony. However, there is no evidence that plaintiff is prevented "from engaging in [religious] conduct or having a religious experience." Plaintiff does not claim he is prevented from attending the service that takes place after the candles are lit by the Jewish facilitator. Plaintiff is merely not in the room when the candles are actually lit. Neither party mentions that there is a group service on Friday nights following the evening count. However, the court takes judicial notice that this group service is discussed in a similar action (*See Barendt v. Gibbons*, 3:08-cv-161-LRH (RAM), docket #36, p. 5). Further, there is a group service on Saturday evenings. *Id*. Plaintiff does not note either service, and does not state that he is unable to attend the Friday or Saturday group services. Plaintiff also receives Kosher meals. As plaintiff is able to attend Sabbath services following the candle-lighting, there is no evidence before the court that defendants have placed a substantial burden on plaintiff's religious practices. Therefore, plaintiff has not made a showing

of a likelihood of success on the merits of his claim.

**(B)        First Amendment - Freedom of Religion**

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curium) (citations omitted). In order to implicate the Free Exercise Clause, the prisoner's belief must be both sincerely held and rooted in religious belief. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). In analyzing the legitimacy of regulation of prisoners' religious expression, the court should utilize the *Turner* factors. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Turner v. Safley*, 482 U.S. 78, 89 (1987) ("First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." Second, the court must determine "whether there are alternative means of exercising the right that remain open to prison inmates." Third, the court must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Fourth, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation.").

Although plaintiff is not able to attend the candle-lighting ceremony, defendants have legitimate reasons for restricting the candle lighting portion of the Sabbath service. Defendants claim that the candle lighting ceremony normally takes place at the same time as the evening inmate count and dinner (#68, p. 6). These two daily events require the largest allocation of prison resources at LCC; therefore, allowing all Jewish inmates to attend the candle-lighting ceremony in addition to the later Sabbath service would place a burden on prison resources. *Id*. Further, "a security threat exists if inmates are permitted access to fire without proper supervision," which threat is mitigated when only a facilitator is allowed to light the candles. *Id*.

The court agrees that the prison's policy of allowing only a facilitator to light the candles satisfies the *Turner* factors. First, there is a "valid, rational connection" between the regulation and the government interest. The prison must use significant resources to facilitate the evening

count and assure that no prisoners have escaped. This becomes more difficult if numerous prisoners are not in their cells, and could affect the veracity of the count procedure. Second, plaintiff maintains alternative means of exercising his religion. He may attend the Sabbath service following the count, as well as the Saturday service. Third, accommodating the attendance of all Jewish prisoners at the candle-lighting ceremony would adversely affect the guards, other inmates, and prison resources. As already mentioned, the prison must use significant resources to facilitate the evening count. Allowing all Jewish inmates to attend the candle-lighting ceremony would strain these limited resources. Fourth, plaintiff has not indicated any reasonable alternatives. Therefore, plaintiff has not made a showing of a likelihood of success on the merits as to his First Amendment claim.

**2. Irreparable Injury**

To obtain a preliminary injunction, plaintiff must offer evidence that is likely to be irreparably injured without the injunction. *Johnson*, 72 F.3d at 1430. "Courts generally do look at the immediacy of the threatened injury in determining whether to grant preliminary injunctions." *Privitera v. California Bd. Of Medical Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991) *citing Caribbean Marine*, 844 F.2d at 674 ("a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief"). As plaintiff has not demonstrated that his First Amendment rights were violated, plaintiff has not offered evidence that he is likely to be irreparably injured. Although the court agrees that a First Amendment violation may constitute irreparable injury (*see Sammartan v. First Judicial District Court, in and for County of Carson City*, 303 F.3d 959, 973 (9th Cir. 2002)), as explained above, plaintiff has not demonstrated a likelihood of success on his First Amendment claim. Therefore, plaintiff has not presented evidence sufficient to show a likelihood of irreparable injury.

**3. Balance of Hardships and Public Interest**

Because the court concludes that plaintiff failed to demonstrate a likelihood of success on the merits and irreparable injury, the court has not addressed the balance of hardships or public interest element.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not made a showing of a likelihood of success on the merits of either his RLUIPA or First Amendment claims. Further, plaintiff has not demonstrated a likelihood of irreparable injury. As such, the court recommends that plaintiff's emergency motion for preliminary injunction (#65) be **DENIED**.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's emergency motion for preliminary injunction (#65) be **DENIED**.

**DATED:** August 17, 2009.

_____
**UNITED STATES MAGISTRATE JUDGE**