# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DAVID PUTZER,

    Plaintiff,

vs.

JAMES DONNELLY *et al.*,

    Defendants.

3:07-cv-00620-LRH-VPC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

May 10, 2010

Before the court are plaintiff's amended motion for summary judgment (#199) and defendants' motion for summary judgment (#170). Defendants opposed (#208), and plaintiff replied (#216). Plaintiff opposed (#209), and defendants did not reply. The court has thoroughly reviewed the record and the motions and recommends that defendants' motion for summary judgment (#170) be granted and plaintiff's amended motion for summary judgment (#199) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff David Putzer ("plaintiff"), acting *in pro se*, is currently a prisoner at Lovelock Correctional Center ("LCC") in the custody of the Nevada Department of Corrections ("NDOC") (#99). Plaintiff brings his first amended complaint pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 2000cc, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), alleging that prison officials violated his constitutional rights to free exercise of religion, due process, and equal protection, and retaliated against him after he exercised his First Amendment rights while incarcerated at LCC. *Id.* Plaintiff names as defendants James Donnelly, correctional officer at LCC; Richard Garcia, Chaplain at LCC; Ronald Halstead, Associate Warden of Operations at LCC; Robert LeGrand, Associate Warden of Programs at LCC; Valaree Olivas, correctional officer at LCC; Jack Palmer, LCC Warden; Howard Skolnik, NDOC Director; and Teena Schore, correctional officer at LCC. *Id.*

On August 13, 2007, Chaplain Garcia circulated a memorandum to "Central Control," noting

that "Jewish workers need access to the Visiting room on Fridays at 4:45 PM to light the Jewish candle, for prayers as set-up for Jewish service" (#170, Ex. C) (emphasis in original).[1] The memo also reads, "The workers will remain in Visiting through the Jewish service which begins at 5:45." *Id.* Defendant Garcia listed six inmates as "authorized to light the candle." Plaintiff was not included on the list. On August 19, 2007, plaintiff requested permission to attend the candle lighting ceremony (#199-2, Ex. 1). Defendant Garcia responded, "The candlelighting is not a service open to all. I'm sorry. You may, however, attend the Jewish services on Friday and Saturday evenings."

The parties dispute the events of September 7, 2007. Defendants maintain that plaintiff attended the candle ceremony at 4:45 p.m. in violation of defendant Garcia's response to his request. They argue that "within minutes of entering the visiting room, he and another inmate, Jason Blaine, were removed by correctional officers because they were not on the list of Jewish Facilitators authorized to attend the ritual" (#170, p. 4). On the other hand, plaintiff asserts that he did not arrive until 5:35 p.m., at which time defendant Schore, in the control room, told plaintiff to return at 6:00 p.m. (#99, pp. 4-5). Plaintiff claims to have returned at that time, and defendant Schore opened the door to the visiting area. Plaintiff then gathered his Kosher meals and left the visiting room area.[2] Prison officials stopped those inmates who were leaving the visiting area and checked the inmates'

---

[1] The lighting of two Sabbath candles (because of the two versions of the Decalogue that speak of 'remembering' and 'observing' the Sabbath day), together with the recitation of the appropriate blessing, is the prerogative of the mistress of the household . . . Lights are kindled by women at the outset of Sabbaths and festivals and indicate the approach of a day of light and cheerfulness. The kindling of the lights is one of three commandments that "women are obliged to perform, but in the absence of women the obligation falls on men." It has been suggested that the custom arose to protest against the Babylonian belief in the Sabbath as an unlucky and gloomy day when no fire or light was lit.

R.J. Zwi Werblowsky & Geoffrey Wigoder, *The Oxford Dictionary of the Jewish Religion* 147, 400 (1997).

[2] Plaintiff submits a copy of a NDOC Menus for Kosher meals, which indicates that "Saturday meals will be sent on Friday night to Chapel with Facilitator meals" (#199-2, Ex. 7).

identification.

On September 17, 2007, prison officials served plaintiff with a notice of charges. The notice of charges from defendant Olivas reads in full, "During Jewish services held in the visiting room on September 7, 2007[,] Inmates Blaine 84746 and Putzer 89545 were found in the visiting room[.] Neither inmate was approved by the chaplain to attend the service and both inmates had been specifically told that they could not attend. Delay in entry due to officers and chaplain on RDO's" (#170, Ex. D). At his disciplinary hearing, plaintiff requested the presence of three witnesses: defendant Garcia and two inmates (#209, Ex. 3). Plaintiff's request was rejected. *Id.* The hearing officer, defendant Donnelly, found plaintiff guilty of "disobedience" and "presence in an unauthorized area" (#172, Ex. F (*sealed*)). He noted that "Officer's report and supporting O-28's and email from Institutional Chaplain clearly state Inmate Putzer did not have access to visiting on that date." *Id.* Defendant Donnelly restricted plaintiff's canteen privileges for thirty days.

In count I, plaintiff focuses on the prison's procedure of allowing only one inmate to light the Shabbat candle. Plaintiff contends that his inability to participate in the candle-lighting ceremony constitutes a substantial burden on his religious practice in violation of RLUIPA. Plaintiff also alleges that the prison's practice regarding the candle lighting ceremony is an impermissible restriction on his free exercise of religion in violation of the First Amendment. Plaintiff further claims that defendants retaliated against him for the exercise of his religious rights and alleges that "all named defendants violated the Equal Protection Clause because I did not receive a reasonable opportunity of pursuing my Jewish faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts" (#99, p. 10). Finally, plaintiff claims that defendants acted in conspiracy to violate his civil rights by intentionally discriminating against him for his religious beliefs. Plaintiff also alleges that his inability to participate in the candle lighting ceremony violates state law, which requires defendants to provide for religious services.

In count II, plaintiff turns to the subsequent disciplinary action against him. He alleges that defendants' refusal to call witnesses at his disciplinary hearing is a violation of procedural due process under the Fourteenth Amendment. *Id.* p. 15. He also alleges that defendant Donnelly found him guilty of the two infractions without sufficient evidence. Similar to his allegation in count I,

3

plaintiff alleges that defendants' acts were in retaliation for plaintiff's exercise of his religion and that such acts are further violation of the First Amendment and RLUIPA.

The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A.  Discussion**

    **1.  Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule

4

56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B.     Analysis**

Plaintiff alleges that the defendants have violated his First and Fourteenth Amendment rights, and his rights under federal law, by prohibiting him to attend the candle lighting ceremony on Friday evenings prior to sundown.

**1.     Free Exercise Clause**

"Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights. . ." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). A prisoner's right to free exercise of his or her religion is necessarily limited by incarceration and may be curtailed to achieve legitimate correctional goals or to maintain prison security. *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam). To implicate the Free Exercise Clause, a belief must be "sincerely held" and "rooted in religious belief." *See Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008) (holding that the sincerity test set forth in *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994), and *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981), determines the applicability of the Free Exercise Clause).

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Shakur*, 514 F.3d at 883-84 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). *Turner* sets forth four factors to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89. Second, the court must determine whether there are "alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Third, the court must consider "the impact accommodation of the asserted

5

1 constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* Fourth, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation."

The first *Turner* factor requires determining whether there is a legitimate penological interest that is rationally related to the disputed regulation. Defendants submit the affidavit of LCC Warden, Jack Palmer, who cites security concerns as to why the prison must limit access to the candle lighting (#172, Ex. G (*sealed*)). Defendant Palmer notes that the officer charged with supervising the area confronts great difficulty at that time of the day. *Id.* Prison officials must conduct a count procedure and escort inmates to dinner. *Id.* The candle lighting ceremony also coincides with the shift changing of officers in the prison. *Id.* Plaintiff responds that defendants have exaggerated security concerns, but he does not provide any evidence to that end. Because the number of persons at the ceremony and the timing of the ceremony directly intersects with security of the institution, the court finds that this factor favors the defendants.

The second *Turner* factor examines whether plaintiff has "alternative means by which he can practice his religion" or is "denied all means of religious expression." *Shakur*, 514 F.3d at 886. Defendants argue that plaintiff is not denied "all" means of religious expression because he is only restricted from lighting the candles but is still able to participate in the evening's religious services (#170, p. 10). Plaintiff even appears to agree with defendants, stating in his opposition to the defendants' motion for summary judgment that "[y]es Putzer has 'alternative means by which he can practice his religion'" (#209, p. 9). However, plaintiff argues that Jewish men are required to light the candles when no women can do so and that one's faith is tied to the performance of practices. *Id.* Plaintiff adds that the "lighting the Sabbath candles it is importent to me personally on a weekly basis." *Id.* p. 11. The court understands that a particular religious practice may have significant personal import to an inmate, but the question is whether the restriction in question denies an inmate "all means of religious expression." *See Shakur*, 514 F.3d at 886. On this point, the court is not convinced that the restriction on the number of inmates at the candle lighting does so. Plaintiff may participate in the services that follow the lighting of the candle; he is merely precluded from the lighting of the candle. Therefore, this factor favors the defendants.

The third *Turner* factor considers the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. In his affidavit, defendant Palmer refers to the prison's limited resources and notes the numerous duties which fall squarely on the shoulders of one prison officer at the particular time of the service (#172, Ex. G (*sealed*)). This court is aware that prison administration is an "inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Resnick v. Adams*, 348 F.3d 763, 770-71 (9th Cir. 2003). Because an exception for plaintiff would place burdens on the prison with respect to safety, time, and resources, this factor weighs in favor of defendants. *See Henderson v. Terhune*, 379 F.3d 709, 714 (9th Cir. 2004).

The fourth *Turner* factor requires consideration of whether "there are ready alternatives to the prison's current policy that would accommodate [plaintiff] at de minimus cost to the prison." *Shakur*, 514 F.3d at 887. "[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation," *Washington v. Harper*, 494 U.S. 210, 225 (1990), while the existence of alternatives may be "evidence that the [policy] is not reasonable but is an 'exaggerated response' to prison concerns," *Turner*, 482 U.S. at 90-91. Here, plaintiff points to the prison's ability to accommodate the practices of Muslim inmates during count procedures (#199, Ex. 6). Plaintiff submits a LCC memorandum from August 28, 2008, where Associate Warden LeGrand allows "out count" for "all groups" of Muslim inmates who participate in religious practices surrounding Ramadan. *Id.* However, this does not evidence a ready alternative to the current policy. Defendants have noted that the timing of the ceremony is the issue, not the ceremony itself. *See* #172, Ex. G (*sealed*). The "out counts" of Muslim inmates occurs at wholly different times in the day. See #199, Ex. 6 (times are at 1:00 p.m., 4:00 p.m., and 7:30 p.m.). Thus plaintiff fails to demonstrate any ready alternatives to the current policy. Moreover, "[w]hen it comes to judicial review of prison regulations, 'separation of powers concerns counsel a policy of judicial restraint.'" *Resnick v. Adams*, 348 F.3d 763, 771 (9th Cir. 2003) (quoting *Turner v. Safely*, U.S. 482 at 85). Accordingly, the court finds that this factor tips in favor of defendants.

Because plaintiff does not present any factual issues concerning the reasonableness of the

restriction, the court grants summary judgment in favor of defendants on plaintiff's First Amendment claim.

   **2.    RLUIPA**

The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq*., provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). The Supreme Court has specifically noted that RLUIPA "does not differentiate among bona fide faiths" and has stated that courts must be satisfied that RLUIPA's "prescriptions are and will be administered neutrally among different faiths." *Id.* at 720, 723.

To establish a RLUIPA violation, the plaintiff bears the initial burden to prove that the defendants' conduct places a "substantial burden" on his "religious exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). Once the plaintiff establishes a substantial burden, defendants must prove that the burden both furthers a compelling governmental interest and is the least restrictive means of achieving that interest. *Id*. at 995. RLUIPA is to be construed broadly in favor of the inmate. *See* 42 U.S.C. § 2000cc-3(g) ("This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution").

A substantial burden is one that imposes a significantly great restriction or onus upon the identified religious exercise. *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). A burden is substantial under RLUIPA when the state, "denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an

adherent to modify his behavior and to violate his beliefs." *Shakur*, 514 F.3d at 888 (quoting *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981) (internal quotations omitted)). In other words, a prison policy that subjects the inmate to punishment for noncompliance or that withholds a benefit for noncompliance places a substantial burden on free exercise. *See Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). The extent to which particular prison policy pressures an inmate to betray his religious beliefs would be a factual issue to be resolved at trial.

Here, plaintiff alleges that defendants policy of allowing one inmate to light the candle, which precludes plaintiff from attending the ceremony, constitutes a substantial burden on his religious exercise. As their first exhibit, defendants submit a letter from Rabbi Bradley Tecktiel of the Midbar Kodesh Temple in Henderson, Nevada, to demonstrate that only one inmate is necessary to light the candles for all Jewish inmates (#170, Ex. A). However, the letter is not self-authenticating nor is it accompanied by an affidavit and thus fails to comply with the requirements of Rule 56(e). *See* Fed. R. Civ. P. 56(e); *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 972 n.7 (9th Cir. 2003) (affirming the district court's rejection of documents that were neither authenticated nor self-authenticating). Therefore, the court cannot rely on the letter in its determination of the instant motion.

Nevertheless, the burden is on the plaintiff, and he does not establish any fact as to how defendants have placed a substantial burden on his religious exercise. Although plaintiff cannot attend the candle lighting ceremony, there is no evidence that plaintiff is prevented from engaging in religious conduct or from having a religious experience. Plaintiff is able to attend the 5:45 p.m. service that follows the candle lighting (#170, p. 4). After the service, plaintiff gathers his Kosher meals for the Sabbath. In a typical Jewish household, the women light the candles, and the men are not present (usually at synagogue). *See*, *supra*, n.1. Yet in the absence of women, the duty falls on the men. *Id.* However, plaintiff does not provide any evidence that in an all-male setting such as prison, every individual man must light a candle for himself and that allowing one inmate to act, so to speak, as the "woman of the household," is prohibited. There is no evidence before the court that defendants have placed a "substantial burden" on plaintiff's religious practices.

Even assuming a substantial burden to plaintiff's religious exercise exists, the government demonstrates that a compelling government interest exists in the security of the institution and that restricting the number of inmates is the least restrictive means of doing so. "Maintaining good order, security and discipline, consistent with consideration of costs and limited resources," is a compelling government interest. *Cutter v. Wilkinson*, 544 U.S. at 722. In its analysis of the "compelling governmental interest" standard, the court must exhibit a "particular sensitivity to security concerns" and be "mindful of the urgency of discipline, order, safety, and security in penal institutions." *Id*. at 722-23. To that end, the court should apply RLUIPA's standard with deference to the expertise of prison administrators in establishing regulations that will maintain order consistent with the consideration of costs and limited resources. *Id*. (internal citations omitted).

Here, defendant Palmer outlines the security concerns surrounding the lighting ceremony (#172, Ex. G (*sealed*)). He notes that reassigning staff to accommodate numerous inmates at the candle lighting ceremony would lead to under-staffing and inadequate supervision. *Id.* Such limited government resources constitutes a compelling governmental interest; moreover, the court should not second guess those concerns. Defendants have demonstrated that a compelling government interest exists in the safety of the institution. Furthermore, defendants demonstrate that, rather than eliminating the entire ceremony, limiting the number of persons in the visiting area is the least restrictive means in order to maintain the safety of the institution. *See* #172, Ex. G. (*sealed*).

Therefore, the court grants summary judgment on plaintiff's RLUIPA claim.

**3.   Equal Protection**

The Equal Protection Clause requires the State to treat all similarly situated people equally. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Each prisoner is entitled to a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972).

Plaintiff alleges that other religious sects are allowed to attend religious services while Jewish inmates are not (#99, p. 4). Plaintiff points to defendant Garcia's acts of removing a service from the Chapel schedule and refusing plaintiff's requests to participate in the candle lighting ceremony. *Id.* Defendants maintain that plaintiff has offered no evidence to support his claim that defendants

have failed to make a reasonable accommodation for the purposes of discriminating against him on the basis of religious beliefs. The court agrees. Plaintiff does not present any evidence that defendants have failed to make reasonable accommodations or that they have intentionally discriminated against plaintiff in the exercise of his religious beliefs.

Therefore, the court grants summary judgment on plaintiff's equal protection claim.

### 4. Conspiracy

To establish a claim for conspiracy to deprive a person of his or her civil rights, a plaintiff must prove that a meeting of the minds occurred between two or more persons to deprive the plaintiff of his civil rights. *See Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). Additionally, the plaintiff must demonstrate that some racial or other class-based, discriminatory animus for the conspirators' conduct motivated the deprivation, and the plaintiff must be a member of the discriminated class. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002).

Here, as discussed above, plaintiff does not produce any evidence that defendants intentionally discriminated against him on the basis of his religion. Plaintiff alleges in his complaint that defendant Garcia may have referred to him and another Jewish inmate as "rogue Jews," but plaintiff fails to produce anything more on this point (#99, p. 6).

Therefore, the court grants summary judgment on plaintiff's conspiracy claim.

### 5. Retaliation

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermines those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.* "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68.

11

1 In this case, plaintiff appears to claim that defendants' finding of guilt on two disciplinary infractions constitutes retaliation. He states, "all defendants collectively the state actors took adverse action against me and found me guilty . . . for participating at an authorized 5:45 p.m. Jewish service because plaintiff exercised his Jewish American First Amendment right" (#199, p. 7). Although defendants fail to address the claim, the court notes that it may *sua sponte* grant summary judgment where no genuine issues of material fact exist. *See Cool Fuel v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982) ("[I]f one party moves for summary judgment and . . . it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may sua sponte grant summary judgment to the non-moving party."). As discussed at length below, the disciplinary infractions were issued because plaintiff disobeyed the order directing him not to attend the candle lighting service and his presence in the area was not authorized. Plaintiff has not presented any issue of fact by which a jury could determine that his notice of charges was issued *because of* his religious practice. Thus the court finds that plaintiff has not present a triable issue of fact on an essential element of his claim.

Therefore, the court grants summary judgment on plaintiff's retaliation claim.

### 6. Nevada Revised Statutes § 209.131

Nevada Revised Statutes § 209.131(9) provides that "[t]he Director shall . . . [p]rovide for the holding of religious services in the institutions and facilities and make available to the offenders copies of appropriate religious materials." Plaintiff argues that defendant Skolnik has not provided for religious services.

As discussed above, the court finds that pursuant to NRS § 209.131(9), defendants have provided for the holding of religious services. Here, plaintiff merely expresses disagreement with how those services are arranged and conducted. Plaintiff may attend those services; he is only precluded from the candle lighting ceremony due to safety concerns. The court finds that the director has provided for the holding of religious services with his required duties under state law. *See, generally, Cook v. Housewright*, 611 F. Supp. 828 (D. Nev. 1985).

Therefore, the court grants summary judgment on plaintiff's state law claim.

### 7. Procedural Due Process

Plaintiff claims that he was denied the safeguards of procedural due process under the Fourteenth Amendment because (1) he was unable to call witnesses at his disciplinary hearing, and (2) no evidence exists to uphold the finding of prison officials.

#### a. Presence of Witnesses at Disciplinary Hearing

To state a claim for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest. Once a plaintiff has met the threshold requirement of pleading a liberty interest, the court then proceeds to analyze the amount of process due. *Wolff v. McDonnell*, 418 U.S. 539 (1974).

Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. *See id.* Liberty interests created by prison regulations are limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). There is "no liberty interest in freedom from state action taken within the sentence imposed." *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997). Even so, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin* . . . ." *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005).

Under *Sandin*, a factual comparison must be made between the conditions in general population and administrative segregation, "examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003). Courts consider three factors in undertaking this analysis: (1) the prisoner's conditions of confinement; (2) the duration of the sanction; and (3) whether the sanctions will affect the length of the prisoner's sentence. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

Plaintiff's guilt on both charges resulted in thirty days of lost canteen privileges (#172, Ex. F (*sealed*)). The sanction did not otherwise affect his conditions of confinement, and it did not affect

13

the length of plaintiff's sentence. Since the court finds no liberty interest at stake, the amount of process due is not at issue. Accordingly, the court grants defendants' motion for summary judgment on plaintiff's due process claim for denial of witnesses at the disciplinary hearing.

### b. Lack of Evidence for Findings of Guilt

However, where "no shred of evidence" exists to support an inmate's finding of guilt, a due process violation may occur, notwithstanding the absence of a cognizable liberty interest. *See Burnsworth v. Gunderson*, 179 F.3d 771, 774 (9th Cir. 1999). In *Superintendent v. Hill*, 472 U.S. 445 (1985), the Court held that the revocation of good time credits did not comport with the requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Burnsworth* applied the underlying rationale of *Hill* and indicated that the concept of a fair hearing applies even in certain situations where no cognizable liberty interest exists. *Id.* (noting that minimal due process rights exist outside of liberty interests, such as clemency proceedings, state-prescribed rights of appeal for criminal defendants, and parole and probation hearings). The *Burnsworth* court held that *Hill* "restates the fundamental principle of due process in prison disciplinary hearing - 'the minimum requirements of procedural due process' require that the findings of the prison disciplinary board [be] supported by *some evidence* in the record." *Id.* (*quoting Hill*, 472 U.S. at 454-55) (emphasis added).

*Hill* described the "some evidence" standard as "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. In *Hill*, the Court held that the testimony and report of one prison guard, no matter how unlikely it may have been, constituted some evidence. *See id.* at 456. The evidentiary burden here is undoubtedly light and the language used as well as the facts in *Burnsworth* court underscore that concept. *Burnsworth*, 179 F.3d at 774 ("[I]t is incorrect to state that due process is not violated when a prison disciplinary hearing board convicts an inmate of escape after that board holds a hearing at which *no shred of evidence* of the inmate's guilt is presented.") (emphasis added). In that case, prison officials found an inmate guilty of attempted escape where the inmate had merely mentioned that he would have to "hit the fence" if placed back into general population. *Id.*

Plaintiff submits a tape recording of the proceeding in front of defendant Donnelly, and

14

1  defendants' submit the notice of charges, the incident report, and a summary of the disciplinary
2  hearing (#170, Ex. D).  Plaintiff urges this court to listen to the evidence and find that defendants
3  did not meet their evidentiary burden.  The evidence is meager at best, and this court may have
4  arrived at a different conclusion.  However, this court must leave the findings of a prison
5  disciplinary board undisturbed so long as "some evidence" exists.  The testimony of defendant
6  Olivas and her report as to plaintiff attending the service and being in visiting at a time not permitted
7  by defendant Garcia is "some evidence" of plaintiff's guilt.  The court notes that even plaintiff
8  himself admits to arriving at the visiting room gates at 5:35 p.m., ten minutes ahead of the time he
9  was permitted to attend the service (#209, Ex. 3).

Therefore, the court finds that "some evidence" exists by which defendant Donnelly could find plaintiff guilty of the two infractions.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not demonstrated any issues of fact regarding his RLUIPA or First Amendment claims. Further, plaintiff has failed to demonstrate that issues of fact on essential elements in his equal protection, retaliation and conspiracy claims.

In addition, plaintiff has not demonstrated that his procedural due process rights were violated. Defendants need not have called witnesses in this instance, and defendant Donnelly's findings were supported by "some evidence."

As such, the court recommends that defendants' motion for summary judgment (#170) be **GRANTED** because plaintiff has failed to produce issues of fact as to essential elements of his claims. Since no reasonable jury could find for plaintiff, the court recommends that plaintiff's motion for summary judgment (#199) be **DENIED**.

///
///
///
///
///

15

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#170) be **GRANTED** and that plaintiff's motion for summary judgment (#199) be **DENIED**.

**DATED:** May 11, 2010.

_____
**UNITED STATES MAGISTRATE JUDGE**